OPINION OF THE COURT
Norman J. Wolf, J.
Petitioner Butler has moved this court for an order and judgment pursuant to CPLR article 78 directing the City of Buffalo to make contributions to the New York State Employees’ Retirement System in an amount to be determined necessary by that retirement system to purchase creditable service for the prior CETA service time of the petitioner and the class of persons similarly situated and for counsel fees and disbursements and other and further relief. Respondents have requested this court deny petitioner’s request for recovery of the costs and disbursements and deny class action certification.
*14 Although petitioner has framed this matter in terms of a class action, he has not fully complied with the requirements of CPLR article 9. Petitioner has not moved for an order determining whether the action may be maintained. Petitioner has failed to submit sufficient evidence to establish to this court’s satisfaction that the class of people he seeks to represent is so numerous as to satisfy CPLR 901 (subd a, par 1). Petitioner has further failed to set forth the extent and nature of any litigation concerning the controversy already commenced by or against members of the class. Although class action status cannot be granted upon the information now before the court, the rights of others so situated will be governed by the principle of stare decisis. Nor shall today’s decision preclude the bringing of a class action upon proper application in the future.
The instant case arises out of the interpretation of chapter 769 of the Laws of 1975 of New York State. Said law provides, in relevant part, that:
“§ 3. * * * [A]ny person employed in transitional public employment service who, at the termination of service in such position, renders five years or more of service in another position for which creditable service is granted under such system or plan, may obtain credit, not to exceed four years, for such period of transitional public employment service provided that:
“(a) such person makes application to the comptroller or administrative head of his retirement system or plan for credit not later than one year after the completion of such five years of creditable service; and
“(b) the comptroller or administrative head of the retirement system or pension plan, for which such person would have been eligible for membership during the period of his transitional public employment service but for the exclusion from such membership provided for in section two of this act, makes a determination that such person is eligible for the service credit provided for in this act and notifies such person and the employer for whom he worked in such service of his determination together with the amount of any contributions which the employee or employers shall be required to make, in accordance with the provisions of paragraph (c) of this section, before such service credit shall be granted; and
*15 “(c) upon receipt of such notification, the member and his employer shall make contributions to the appropriate funds of the system or plan in an amount equal to the amount that would have been contributed by both the member and his employer, plus regular interest, had such transitional public employment service been creditable service under such system or plan; and
“(d) the deposits provided for in paragraph (c) of this section must be made no later than one year from the date such person makes application for the service credit provided by this act, provided, however, that such employer or employee may elect to deposit such amounts as may be necessary over a period of time no greater than the period for which credit is being claimed. If the full amount of such payments are not made, the amount of service credited shall be proportional to the total amount of the payments made.”
Petitioner worked for the City of Buffalo as a CETA VI employee from February 14, 1975 until July 16, 1977. Although at the time petitioner entered CETA employment, such employees could enroll in the New York State Employees’ Retirement System, he did not. Effective September 1, 1975, petitioner was not eligible to enter the system while a CETA employee. On July 19, 1977, petitioner was appointed to service with the City of Buffalo. After he completed five years of service with the City, petitioner made timely application to the retirement system to have his prior CETA service credited to his retirement account. The retirement system has advised that they will credit such service upon confirmation from the City of Buffalo that it will make the necessary employer contribution. The City of Buffalo has advised that it will not make the contribution. The question thus presented to this court is: Is the employers’ contribution voluntary or mandatory?
There have been two cases, neither officially reported, which interpret chapter 769. The first, from Justice McCarthy of the Suffolk County Supreme Court, dated March 2,1983, found that “The language of the applicable law is clear * * * the employer has an obligation to pay the amount determined by the retirement system or plan.” *16 (Kaltz v Cohalan, Supreme Ct, Suffolk County, March 2, 1983, index No. 82-19181, p 3.) The second is an arbitrator’s report from an August 4, 1983 hearing, in which Arbitrator Robert B. McKersie found that “This language is permissive and given the interpretation by the Counsel of the retirement system, it is clear that the employer is not required to make these contributions unless it has entered into some type of commitment.” (Matter of City of Troy [Troy Police Benevolent Protective Assn.], PERB case No. A82-129, p 6.)
CPLR 1012 (subd [c]) requires that notice be given to the Comptroller of the State of New York when public retirement benefits are in issue. He is permitted to intervene or to file a brief amicus curiae. This was done in the instant case, but since it was not done in the Kaltz case (supra), respondent argues that that case should not be viewed as precedent by this court.
This court has very carefully reviewed the brief amicus curiae submitted by the counsel for the New York State Employees’ Retirement System on behalf of the Comptroller. It refers in large part to the contents of the Bill Jacket of chapter 769 of the Laws of 1975.1, too, have reviewed the Bill Jacket and the intent of the framers of this legislation is clear. Prior to passage of this legislation, municipalities had to make contributions to the State retirement fund for transitional CETA employees. This resulted in many dollars being diverted to the State retirement system from CETA funds. The office of New York State Comptroller Levitt recommended disapproval of the passage of chapter 769, arguing that the bill was unconstitutional and that CETA employees are no less public employees than their co-workers. The July 3, 1975 letter of Arthur Levitt by William C. Walsh, Deputy Comptroller, to the Governor’s Counsel, Judah Gribetz, states (p 3): “such crediting can be accomplished only if the person renders five or more years of service in the position which entitled him to join the Retirement System, and then makes application for the credit within one year after the completion of such five years. These requirements are most inequitable, and, since they apply only to this class of Retirement System members, are patently discriminatory. They constitute a tortu *17 ous path, with many pitfalls, and seem to be so designed as to deny Retirement System rights and benefits to the unwary public employee.”
The bill was passed over the objections of the Comptroller and Budget Examiners Schoenberger and Schraut who warned of the “substantial long-range cost implications particularly for the State and local governments”.
Cosponsor of the bill, Senate Majority Leader Warren Anderson, in a letter to the Governor’s Counsel, summarized the bill to provide that employees who later join the retirement system “will have” an employer contribution made. Stanley Steingut, Speaker of the Assembly, noted that the bill served the dual purpose of protecting the best interests of transient CETA workers, and also that minority of CETA employees who became permanent civil servants. A position paper prepared by the Assembly Office of Research and Analysis noted at page 4 that “When such a permanent employee asks for credit for his CETA years, the county or city which employs him will have to make a special contribution to the retirement system to cover back payments for the years in question plus interest * * * Still, to the extent that the cities and counties make their CETA people permanent employees, the municipalities will incur the costs of the special contributions to the Retirement System at some future time. Nevertheless, localities across the State support S. 5940-A overwhelmingly because the retroactive retirement contributions that they might have to make five to seven years from now seem extremely insignificant when compared to the total amount of additional federal money that they could now use to hire the unemployed” (emphasis added). Then Erie County Executive Edward Regan (now New York State Comptroller) in a letter dated July 30, 1975, noted that “the municipalities would not have to pay into the retirement fund unless the employee achieved permanent status at which time the local government would have to make retroactive payments” (emphasis added).
It is eminently clear that the Legislature never intended to only grant retirement service credits to former CETA employees if their employer chooses to make retroactive payments. Such payments are mandatory upon the employee making proper application.
*18 Accordingly, this court finds that the City of Buffalo is required to make such contribution to the New York State Employees’ Retirement System in an amount to be determined necessary to purchase creditable time for the prior CETA service time of the petitioner, Richard A. Butler. Petitioner’s application for class, action status and for counsel fees is denied.